UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

                      :

**NICHOLAS MANFRE**,

                      :

                 Plaintiff,    :  **MEMORANDUM DECISION AND ORDER**

                      :

        – against –       :  24-CV-6067 (AMD) (LKE)

                      :

**FAY SERVICING, LLC;** and **US BANK TRUST** :
**NATIONAL ASSOCIATION**, **not in its**
**individual capacity but solely as owner trustee** :
**for VRMTG ASSET TRUST**,

                      :

        Defendants.     :

---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against Fay Servicing, LLC and U.S. Bank Trust National Association ("U.S. Bank"),[1] alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2601 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As explained below, the motion to dismiss is granted.

## BACKGROUND

### I.    Factual History

On July 15, 2003, the plaintiff purchased the home at 14 Florence Place, Staten Island, New York 10309 and executed a note for $200,000, secured by a mortgage on the property in

---

[1] The plaintiff sues U.S. Bank solely as the trustee for the owner of his mortgage loan — VRMTG Asset Trust. (ECF No. 1 ¶ 5.)

favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), a nominee for DMAS Financial Services, Inc. ("DMAS").  (ECF No. 1 ¶¶ 16–17.)  Between 2003 and 2020, the mortgage was assigned multiple times and the servicer of the mortgage loan changed repeatedly.  (*Id.* ¶¶ 3–13, 18.)  The loan was serviced by Bank of America, N.A. ("BANA") or its predecessor entities from July 15, 2003 to May 14, 2012, by Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") from May 15, 2012 to December 17, 2017, and by Specialized Loan Servicing LLC n/k/a Newrez LLC d/b/a Shellpoint Mortgage Servicing ("SLS") from December 18, 2017 to March 2, 2020.  (*Id.* ¶¶ 5–12.)  Fay Servicing has serviced the loan since March 3, 2020.  (*Id.* ¶ 4.)  The current owner of the plaintiff's mortgage loan is VRMTH Asset Trust; U.S. Bank is the designated trustee.  (*Id.* ¶¶ 5–6.)

In 2010, the plaintiff stopped making payments on his mortgage loan.  Exhibit D to Complaint, *Specialized Loan Servicing LLC v. Nicholas Manfre*, Index No. 135923/2014 (N.Y. Sup. Ct. Nov. 20, 2014).[2]  As a result, the prior servicer — SLS — brought a foreclosure action against the property in 2014.  *Id.*  While the proceedings were ongoing, Fay took over for SLS as the servicer.  (*Id.* ¶¶ 5–12.)  On January 18, 2022, the plaintiff and Fay, acting as "attorney in fact" for U.S. Bank, agreed to a loan modification agreement.  (ECF No. 1 ¶ 19; *see also* ECF No. 1-15 (loan modification agreement).)  The modification increased the unpaid principal balance from $167,658.63 to $402,701.15, after accrued fees, interest, and other expenses capitalized.  (ECF No. 1 at ¶¶ 19–20.)  It also required the plaintiff to pay a $199,134.48 "balloon payment" when the loan reaches maturity.  (*Id.* at ¶ 21.)  After the parties agreed to the

---

[2] The foreclosure action and related filings are state court records, which are a matter of public record of which the Court may take judicial notice.  *See Krick v. Raytheon Co.*, 23-CV-8093, 2026 WL 607395, at *7 (E.D.N.Y. Mar. 2, 2026).

modification, the foreclosure action was dismissed (ECF No. 37 at 25 n.9), and the plaintiff has since remained current on the modified loan.  (*Id.* at 30 n.12.)

On April 10, 2024, the plaintiff sent Fay a request for "an itemization and explanation of all fees and other amounts charged to Plaintiff's account and/or added to the loan balance since origination," among other things.  (ECF No. 1 ¶ 24; ECF No 1-16 (qualified written request).)  Fay responded on May 13, 2024, and sent documents including the plaintiff's account history, corporate advance history, fee history, and escrow analyses from March 3, 2020 to April 29, 2024.  (ECF No. 1 ¶ 29; *see also* ECF No. 1-17 (Fay's response letter).)  Fay did not provide everything that the plaintiff requested, describing some of his requests as "overbroad, unduly burdensome, or irrelevant and not directly related to the mortgage loan account."  (ECF No. 1-17 at 2.)  Fay did not provide information that pre-dated its involvement with the loan, explaining that "Fay is limited in our ability to provide a full account history breakdown since origination of the loan as Fay has not serviced this loan in its entirety.  We encourage you to contact the originator of the loan and/or previous servicer(s) for origination documents."  (*Id.*)  Fay's response also listed the phone number and times it could be reached.  (*Id.* at 3.)

## II.    Procedural History

On August 29, 2024, the plaintiff filed the complaint in this action.  (ECF No. 1.)  Initially, he sued the current owner and servicer of his loan, U.S. Bank and Fay Servicing, as well as the previous servicers, SLS, Nationstar, and BANA.  (*Id.*)  The complaint included sixteen claims against various combinations of defendants.  (*Id.*)  He brought five claims under RESPA (*Id.* ¶¶ 72–125), four under TILA (*Id.* ¶¶ 126–50), two under the FDCPA (*Id.* ¶¶ 151–65), and five under New York state law (*Id.* ¶¶ 166–221).  After a December 17, 2024 pre-motion conference (*ECF Minute Entry dated Dec. 17, 2024*), the plaintiff agreed to dismiss the

3

case against SLS, Nationstar, and BANA, (ECF No. 33), as well as a RESPA claim and the state law claims against the remaining defendants — Fay Servicing and U.S. Bank (ECF No. 32).

The following RESPA claims remain: "failure to adequately respond to borrower inquiries" under 12 U.S.C. §§ 2605(e)–(f) and 12 C.F.R. §§ 1024.35–.36 (Count 1), "improper administration of escrow accounts" under 12 U.S.C. § 2605(g) and 12 C.F.R. §§ 1024.17, 1024.34 (Count II), "failure to provide required notices" under 12 U.S.C. §§ 2605(b)–(c) and 12 C.F.R. § 1024.33 (Count III), and "violation of servicer prohibitions" under 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.38 (Count IV). (ECF No. 1 ¶¶ 72–118.) The plaintiff also asserts claims under TILA for "failure to comply with post-consummation disclosure requirements" under 15 U.S.C. § 1631 *et seq.* and 12 C.F.R. § 1026.20 (Count VI), "failure to provide other required disclosures" under 15 U.S.C. § 1631 *et seq.* and 12 C.F.R. §§ 1026.31–.32 (Count VII), "prohibited dual compensation charges" under 12 C.F.R. § 1026.36 (Count VIII), and "failure to adhere to required servicing practices" under 15 U.S.C. § 1639f and 12 C.F.R. § 1026.36(c)(1) (Count IX). (*Id.* ¶¶ 143–50.) The plaintiff's remaining claims for "use of false, deceptive, or misleading representations" (Count X) and "use of unfair or unconscionable means to collect a debt" (Count XI) arise under the FDCPA, 15 U.S.C. §§ 1692e, 1692f, 1692k. (*Id.* ¶¶ 151–65.) The plaintiff seeks actual and statutory damages, attorneys' fees and costs, and "such other and further relief as this Court deems just and proper." (*Id.* at 46–47.)

## LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(b) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A court deciding a Rule 12(b)(6) motion may examine "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).  Pleadings are construed in the light most favorable to the plaintiff.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

### I.   RESPA Claims

#### a.   Count One

##### i.   *Qualified Written Request*

Under RESPA, a mortgage loan servicer must respond to a borrower when the borrower sends a qualified written request ("QWR"), which is correspondence that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii); *see also Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (defining qualified written requests).  The parties agree that the plaintiff's April 10, 2024 letter meets this definition.  (*See* ECF No. 37 at 2–4.)

RESPA's implementing regulations define two types of QWRs: (1) notices of errors, which "assert[] an error relating to the servicing of a mortgage loan," 12 C.F.R. § 1024.35, and (2) requests for information, which "request[] information relating to the servicing of the

5

mortgage loan," 12 C.F.R. § 1024.36.[3]  There are different requirements for a servicer's response, depending on whether the QWR was a notice of error or request for information. *Compare* 12 C.F.R. § 1025.35(e) *with* 12 C.F.R. § 1025.35(d).  When a servicer receives a notice of error, it must either correct the error or explain why there was no error.  12 C.F.R. § 1024.35(e)(1)(i).  If the servicer gets a request for information, it must search for and provide the information, if available.  12 C.F.R. § 1024.35(e)(1).

The plaintiff alleges that Fay violated RESPA because it "provided incomplete, inaccurate, and contradictory information" (ECF No. 1 ¶ 84), "refus[ed] to disclose Plaintiff's full account history, or [] explain the extensive fees added to the loan balance" (*Id.* ¶ 86), and "failed to investigate, correct, or explain these errors." (*Id.*)  He does not say whether his QWR was a notice of error or request for information and cites both 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36 in the complaint.  (*See* ECF No. 1 ¶¶ 77–91; ECF No. 38-4 at 14–21.)  However, in his QWR, he sought only information or documents about his loan; he did not assert that there was an error in his account.  (*See* ECF No. 1-16 at 2–4.)  Therefore, the Court finds that the plaintiff was requesting information in the QWR and considers his allegations under 12 C.F.R § 1024.35(d)(1).  *See In re Griffin*, No. 10-22431, 2010 WL 3928610, at \*4–6 (Bankr. S.D.N.Y. Aug. 31, 2010) ("Some error or potential error must be identified in the QWR. . . ."); *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at \*6 (E.D.N.Y. July 30, 2019) (differentiating between requests for information and notices of error).

  ii.  *Actual Damages*

The defendants argue that the Court should dismiss the plaintiff's 12 U.S.C. § 2605(e) claim because he has not adequately pled damages.  (ECF No. 37 at 14–18.)  A plaintiff bringing

---

[3] RESPA's implementing regulations are collectively called "Regulation X."  78 Fed. Reg. 10696 (Feb. 14, 2013).

a claim under Section 2605 must allege actual damages, meaning he "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605." *Urquizo v. Community Loan Servicing LLC*, No. 24-CV-909, 2025 WL 1093073, at *10 (E.D.N.Y. Apr. 11, 2025) (quoting *Manzolillo v. Nationstar Mortgage., LLC*, No. 22-CV-3570, 2025 WL 411754, at *6 (E.D.N.Y. Feb. 6, 2025)). "'Courts commonly dismiss RESPA claims at the pleading stage for failing to' adequately alleged proximate cause for damages." *Id.* (quoting *Bocci v. Nationstar Mortg. LLC*, No. 23-CV-1780, 2024 WL 3813756, at *8 (S.D.N.Y. June 28, 2024), *report and recommendation adopted*, No. 23-CV-1780, 2024 WL 4326932 (Sept. 27, 2024)).

Although the plaintiff alleges that Fay's response to his QWR caused him "loss and reduction of credit, damage to his credit rating, . . . and emotional distress" (ECF No. 1 ¶ 89), he alleges no facts that connect his credit rating or emotional distress to Fay's failure to provide the loan documents he requested. *See Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10-CV-3291, 10-CV-3354, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012). "[C]ourts have consistently dismissed complaints under RESPA if they . . . state merely that in a conclusory fashion the defendant caused damages to the plaintiff." *Corazzini v. Litton Loan Servicing LLP*, No. 09-CV-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) (citations omitted). Even if the plaintiff was injured, he "cannot disentangle the distress" or loss of credit "that was occasioned by the loan modification in which [he] voluntarily entered from that which may have been occasioned by Defendant's failure to respond fully to . . . [his] request[] for information … and for this reason [he] has not alleged actionable . . . damages." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 275 (S.D.N.Y. 2017); *see Roth v. CitiMortgage Inc.*, No. 12-CV-2446, 2013 WL 5205775, at *7 (E.D.N.Y. 2013) ("Even if plaintiff and her husband suffered emotional distress

7

from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to plaintiff's letters."), *aff'd on other grounds*, 756 F.3d 178 (2d Cir. 2014).

Nor has the plaintiff sufficiently alleged that Fay's response proximately caused his "increased debt and financial burden resulting from improperly imposed fees, interest, and other charges." (ECF No. 1 ¶ 89.) It is true, as the plaintiff points out, that if a borrower states accurately in a QWR that certain fees were unwarranted, and the servicer does not correct the error, damages from the improper charges would be readily ascertainable. (ECF No. 38-4 at 19–20.) *See Murray v. Newrez LLC*, No. 24-CV-6160, 2025 WL 1158090, at *7 (E.D.N.Y. Apr. 21, 2025). As explained above, however, the plaintiff did not claim any error in the QWR; he requested information. (*See* ECF No. 1-16 at 2–4.) Thus, the plaintiff "cannot maintain that [he] was damaged by [Fay's] claimed failure to correct any specific error in [his] account." *Jackson*, 2019 WL 3426240, at *8. In sum, the plaintiff has not alleged that he suffered actual damages that were proximately caused by Fay's response to his QWR.

### iii. Statutory Damages

The plaintiff argues that he states a plausible claim for statutory damages even if he does not sufficiently state a claim for actual damages. (ECF No. 38-4 at 19–20.) Under RESPA, plaintiffs may recover statutory damages of no more than $2,000 "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). However, courts in this Circuit have held that Section 2605 does not support a claim for statutory damages or fees absent actual damages. *See, e.g.*, *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016) (collecting cases); *Murray*, 2025 WL 1158090, at *8; *Urquizo*, 2025

WL 1093073, at *10.  Consequently, the plaintiff's claim for statutory damages under RESPA fails because he has not pled actual damages.

Because the plaintiff does not adequately allege that he suffered damages, Count I is dismissed.

###### b.    Count Two

Mortgage loan servicers that require borrowers to make payments "into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property" are subject to certain rules.  12 U.S.C. § 2605(g); *see also* 12 U.S.C. § 2609(c).  The servicers must make the tax, insurance, or other payments "in a timely manner," 12 U.S.C. § 2605(g), and provide the borrower with annual statements itemizing "the amount of the borrower's current monthly payment, the portion of the monthly payment being placed in the escrow account, the total amount paid into the escrow account during the period, the total amount paid out of the escrow . . . , and the balance in the escrow account. . . ."  12 U.S.C. § 2609(c)(2).

Fay sent the plaintiff six escrow account disclosure statements, covering the period from November 2020 to November 2023, in response to his April 2024 QWR.  (ECF No. 1-20.)  First, the plaintiff alleges that the escrow statements "are missing required information" and "contain inaccurate and contradictory information for overlapping time periods," in violation of 12 U.S.C. § 2609 and its implementing regulation, 12 C.F.R. § 1024.17.  (ECF No. 1 ¶ 97.)  Second, he argues that "Fay cannot claim to have satisfied the escrow analysis and notice requirements" of 12 U.S.C. § 2609 and 12 C.F.R. § 1024.17, because the escrow statements listed the wrong mailing address.  (ECF No. 1 ¶ 98.)  Third, he alleges that Fay "fail[ed] to make timely escrow

disbursements on Plaintiff's behalf," in violation of 12 U.S.C. § 2605(g) and its implementing regulation, 12 C.F.R. § 1024.34.  (*Id.* ¶ 100.)

### i.   Section 2609

The defendants argue that the plaintiff's first two claims in Count II — the allegedly inaccurate and untimely escrow account disclosures — must be dismissed because there is no private right of action under Section 2609.  (ECF No. 37 at 20.)  Although the Second Circuit has not addressed the issue, the Fourth, Fifth, and Seventh Circuits, as well as most courts in this Circuit, have concluded that there is no private right of action under 12 U.S.C. § 2609 or 12 C.F.R. § 1024.17.  *See, e.g.*, *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013) (concluding that Section 2609 does not provide a private right of action because Congress excluded Section 2609 from the statute of limitations section and did not amend Section 2609 to provide a private right of action after circuit courts decided one did not exist); *Herman v. Mr. Cooper Group Inc.*, No. 22-CV-8952, 2023 WL 6960283, at *2 (S.D.N.Y. Oct. 20, 2023); *McAnaney v. Astoria Financial Corp.*, 357 F. Supp. 2d 578, 590–91 (E.D.N.Y. 2005).

The plaintiff argues, however, 12 U.S.C. § 2605(g), not 12 U.S.C. § 2609 applies, because Section 2609 is "not mentioned in the Complaint."  (ECF No. 38-4 at 22.)  As an initial matter, 12 U.S.C. § 2605(g) does not say anything about escrow account disclosures — it requires servicers to make timely escrow payments.  12 U.S.C. § 2605(g).  Moreover, even if the plaintiff does not cite Section 2609 in the complaint, he asserts violations of 12 C.F.R. § 1024.17, which is the implementing regulation of 12 U.S.C. § 2609.  *See Herman*, 2023 WL 6960283, at *2.

Alternatively, the plaintiff argues that his escrow disclosure claims are "covered servicing errors under the catch-all provision of 12 C.F.R. § 1024.35(b)(11), which are actionable under 12

10

U.S.C. § 2605(k)(1)(E)." (ECF No. 38-4 at 22.) That argument is also unavailing. 12 C.F.R. § 1024.35 governs QWRs that are notices of error. *See* 12 C.F.R. § 1024.35. As explained above, the plaintiff's QWR was not a notice of error; it was a request for information. 12 C.F.R. § 1024.36, which covers requests for information, lacks an analogous provision. *See* 12 C.F.R. § 1024.36. Therefore, the plaintiff's claims about the escrow account disclosures are dismissed.

### ii.   Section 2605

The plaintiff's third claim in Count II — that Fay "fail[ed] to make timely escrow disbursements on Plaintiff's behalf" — arises under 12 U.S.C. § 2605(g), which provides a private right of action. (ECF No. 1 ¶ 100.) *See Dolan*, 930 F. Supp. at 418. However, the plaintiff does not allege any facts to support this allegation. He provides no detail about what Fay did or when it did it. He does not say whether Fay failed to pay taxes, insurance, or something else, or if he had to pay a penalty because Fay made a late payment. Speculation and "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 (quotations and alterations omitted).

The plaintiff fails to state a claim under Section 2609 or Section 2605. Accordingly, Count II is dismissed.

### c.   Count Three

The plaintiff alleges in Count III of the complaint that Fay did not "notify [him] in writing of any assignment, sale, or transfer of the servicing of the loan to any other person" in violation of 12 U.S.C. § 2605(b)(1) and (c) as well as 12 C.F.R. § 1024.33(b)(1). (ECF No. 1 ¶ 105.) In its response to the plaintiff's QWR, Fay included a copy of the March 2020 notice that Fay would be taking over for SLS as the servicer of his mortgage loan. (ECF No. 1-21 at 21–29.) The plaintiff says that the notice had an "incorrect and/or undeliverable address for

Plaintiff," which he argues "render[s] the notices invalid and insufficient to satisfy" RESPA. (ECF No. 1 ¶ 107.)  The defendants contend that this claim is time-barred and must be dismissed.  (ECF No. 37 at 21–23.)

12 U.S.C. § 2614 requires that a plaintiff must bring an any action "within 3 years in the case of a violation of section 2605 of this title."  12 U.S.C. § 2614.  Fay began servicing the plaintiff's loan in March 2020.  (ECF No. 1 ¶ 4.)  The plaintiff did not initiate this action until August 29, 2024 — more than a year after the statute of limitations expired.  (ECF No. 1.) Nevertheless, the plaintiff argues that his claim is not time-barred because (1) the claim did not accrue until the date of Fay's response to his QWR, May 13, 2024; (2) Fay's failure to provide *all* required disclosures "accrues collectively pursuant to the continuing violation doctrine," so the relevant accrual date is the date of the last escrow disclosure statement — November 20, 2023; or (3) "Fay's failure to provide required disclosures, which were never mailed and/or undeliverable as addressed, concealed the existence of such claims and justifies an application of equitable tolling."  (ECF No. 38-4 at 24, 26–27.)  None of these claims are persuasive.

    *i.      The Plaintiff's Claim Accrued in March 2020*

A RESPA claim accrues on the date of the alleged violation.  *Papapietro v. Clott*, No. 22-CV-1318, 2023 WL 2185150, at *12 (E.D.N.Y. Jan. 30, 2023); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2014 WL 4742509, at *10 (E.D.N.Y. Sept. 23, 2014).  The plaintiff maintains that Fay did not notify him when it began servicing the loan, an alleged violation that occurred in March 2020, not May 13, 2024.  (*See* ECF No. 1 ¶ 4.)  Even if the plaintiff did not find out about the violation until he received the response to his QWR, "mere unawareness of facts or law alone does not justify suspending the operation of the statute of limitations."  *Ruiz v. Suffolk County Sheriff's Dept*, No. 03-CV-3545, 2008 WL 4516222, at *8 (E.D.N.Y. Oct. 2,

2008).  Rather, there must be some other basis to support extending the limitations period, like the continuing violation doctrine or equitable tolling.  *Id.*  As explained below, however, neither doctrine applies.

> ii.     *The Continuing Violation Doctrine Does Not Apply*

The continuing violation doctrine, an exception to the normal rule that a claim accrues when the violation occurs, applies to claims that are "composed of a series of separate acts that collectively constitute one unlawful . . . practice."  *Olivieri v. Stifel, Nicolaus & Company, Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)) (other citations and quotations omitted).  The doctrine is typically asserted in hostile work environment claims.  *See id.*  The few courts in the Second Circuit that have addressed the continuing violation doctrine in the RESPA context have found that it does not apply.  *See Speer v. Select Portfolio Servicing*, No. 23-CV-192, 2023 WL 4850556, at *7 (D. Conn. July 28, 2023) (noting that the plaintiff did not explain how her allegations, if true, constituted a continuing practice or policy of violating her rights under RESPA); *Papapietro v. Litton Loan Servicing, LP*, No. 13-CV-2433, 2020 WL 13179529, at *7 (E.D.N.Y. Mar. 31, 2020) ("Plaintiff has failed to establish any continuing policy or practice violative of RESPA.").  Courts have determined that it does not apply to analogous statutes — TILA and the FDCPA.  *See Craig v. Saxon Mortg. Services, Inc.*, at No. 13-CV-4526, 2015 WL 171234, at *10 (E.D.N.Y. Jan. 13, 2015) (collecting TILA and FDCPA cases).  Moreover, "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  *Hernandez v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234, 2013 WL 6388654, at *5 (E.D.N.Y. Dec. 6, 2013) (quoting *Trinidad v.*

13

*New York City Dep't of Correction*, No. 04-CV-3261, 2006 WL 704163 at \*9, n. 11 (S.D.N.Y. Mar. 21, 2006)).

Even if the continuing violation did apply to RESPA, it surely would not apply in this case, because there is no continuing violation. If Fay violated the notice requirement at all, it did it only once, when it took over the loan. Thus, by definition, there was no continuing violation. In an effort to avoid this result, the plaintiff says the Court should consider the notice violation together with the alleged escrow account disclosure violations, and find a single, continuing pattern of RESPA violations. (ECF No. 38-4 at 26.) Unlike hostile work environment claims, where the "very nature" of the violation "involves repeated conduct," *Morgan*, 536 U.S. at 115, failure to notify is a single unlawful act, and in this case, the alleged failures are covered by two different provisions. *Compare* 12 U.S.C. § 2605(c) *with* 12 U.S.C. § 2609. Section 2605(c) covers transfer notifications, and Section 2609 applies to escrow account disclosures. And, as explained above, Section 2609 does not provide a private right of action. Accordingly, the continuing violation doctrine does not apply.

### iii. Equitable Tolling Does Not Apply

When a "defendant fraudulently conceals the wrong, the [statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 602 (E.D.N.Y. 2017) (quoting *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995)) (alteration in original). A plaintiff "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Phillips v. Generations Fam. Health Ctr.*, 657 F. App'x 56, 58 (2d Cir. 2016) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir.

14

2011)).  A plaintiff can establish an extraordinary circumstance by showing "that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) (quoting *Pearl v. City of Long Beach,* 296 F.3d 76, 85 (2d Cir. 2004)) (emphasis in original).  In that situation, the statute of limitations is tolled "only until such time as a reasonable party relying on it actually knew, or should have known, of the unlawful conduct of the opposing party."  *Coveal v. Consumer Home Mortg., Inc.*, No. 04-CV-4755, 2005 WL 704835, at *4 (E.D.N.Y. Mar. 29, 2005); *see also Blum v. Heller*, No. 24-CV-3130, 2025 WL 2470327, at *13 (E.D.N.Y. Aug. 6, 2025).

The plaintiff was not "pursuing his rights diligently," because a reasonable person in his position should have known about his cause of action well before the limitations period expired. *See Phillips*, 657 F. App'x at 58.  After all, the plaintiff was actively defending against a foreclosure action in state court when Fay started servicing his loan, something about which he was notified on March 18, 2020, when SLS filed a notice in the state proceeding stating that it was transferring the service rights to his mortgage loan to Fay.  Notice of Mortgage Servicer Change, *Specialized Loan Servicing LLC v. Nicholas Manfre*, Index No. 135923/2014 (N.Y. Sup. Ct. Mar. 18, 2020).  At that point, the plaintiff knew of the transfer and could have pursued his right to receive an appropriate notice under RESPA.  He did not.  Thus, the plaintiff has not established that equitable tolling should apply. *Coveal*, 2005 WL 704835 at *4 ("Th[e] due diligence requirement prevents a party from intentionally burying his or her head in the sand.").

Because the statute of limitations on the plaintiff's claim under 12 U.S.C. § 2605(b)(1) has run, and the continuing violation and equitable tolling doctrines do not apply, Count III is dismissed.

15

**d.   Count Four**

In Count IV, the plaintiff alleges that Fay violated 12 C.F.R. § 1024.38 by failing to "maintain policies and procedures that are reasonably designed to achieve the objectives" of 12 C.F.R. § 1024.38(b), including "(i) [a]ccessing and providing timely and accurate information, (ii) [p]roperly evaluating loss mitigation applications, (iii) [f]acilitating oversight of, and compliance by, service providers, and (iv) [f]acilitating transfer of information during service transfers." (ECF No. 1 ¶¶ 112–23.) However, there is no private right of action under 12 C.F.R. § 1024.38. Regulation X provides that "borrowers do not … have a private right of action under the [Consumer Financial Protection Bureau's] rules to enforce the requirements set forth in § 1024.38." 78 Fed. Reg. at 10817–18; *see also, e.g.*, *Mohamed v. Nationstar Mortgage, LLC*, No. 20-CV-216, 2024 WL 4132351, at *6 (E.D.N.Y. Sept. 10, 2024); *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074, 2021 WL 9564023, at *6 (E.D.N.Y. Mar. 24, 2021). Accordingly, Count IV is dismissed.

**II.   TILA Claims**

**a.   Counts Six and Seven**

The plaintiff alleges that the defendants did not give him the disclosures required under TILA and its implementing regulations when he agreed to modify his mortgage loan on January 18, 2022. (ECF No. 1 ¶¶ 132–35.) Similarly, he asserts that he did not get the required disclosures when he took out the mortgage loan in 2003. (*Id.* ¶¶ 17, 136–38.) The defendants argue that both claims must be dismissed because they are time-barred. (ECF No. 37 at 23–26.)[4]

---

[4] The defendants also argue that Count VII should be dismissed because neither U.S. Bank nor Fay Servicing were involved in the origination of the plaintiff's loan. (ECF No. 37 at 25.) The plaintiff responds that the defendants may still be held liable because an assignee takes on the liabilities of an assignor. (ECF No. 38-4 at 29–30.) The Court does not address this question, because it finds that Count VII is time-barred.

15 U.S.C. § 1640(e) provides that any action under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The plaintiff did not initiate this action until well after the statute of limitations had expired for either claim — over two years after the modification and over twenty years after the origination. (ECF No. 1-8; ECF No. 1-15.) The plaintiff argues that the Court cannot consider any facts in deciding this question, because that would "raise[] an improper factual dispute and substantive inquiry that cannot be a basis for dismissal under Rule 12." (ECF No. 38-4 at 29.) In fact, the opposite is true. Fed. R. Civ. Pro. 12(b)(6) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Courts regularly dismiss complaints in which the plaintiffs do not plead sufficient facts to show that equitable tolling is warranted. *See, e.g.*, *Blum*, 2025 WL 2470327, at *13; *Malek v. AXA Equitable Life Insurance Co.*, No. 20-CV-4885, 2023 WL 2682408, at *7 (E.D.N.Y. Mar. 29, 2023) ("Plaintiff has failed to plead facts demonstrating that he pursued his rights diligently, that Defendants engaged in affirmative concealment warranting equitable tolling, or that any other extraordinary circumstance stood in Plaintiff's way.").

"To survive a motion to dismiss an otherwise untimely TILA claim, the pleading must first allege, with specificity, 'efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent . . . the plaintiff from suing in time.'" *Latouche v. Well[s] Fargo Home Mortgage Inc.*, No. 16-CV-1175, 2017 WL 8776975, at *7 (E.D.N.Y. Aug. 25, 2017) (quoting *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2007 WL 2702348, at *9 (E.D.N.Y. Sept. 12, 2007)). The plaintiff asserts, without elaboration, that the defendants "have engaged in fraudulent, misleading, and deceptive efforts to conceal the true nature of their conduct." (ECF No. 38-4 at 29 (quoting *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578,

17

587 (E.D.N.Y. 2005).)  The plaintiff does not identify the origination or modification documents that were missing, let alone provide facts suggesting that the defendants hid that information from him.  Nor is lack of notice alone sufficient to allege fraudulent concealment.  "[C]ourts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations."  *Williams v. Aries Financial, LLC*, No. 09-CV-1816, 2009 WL 3851675, at *7 (E.D.N.Y. Nov. 18, 2009) (quoting *Cardiello v. Money Store, Inc.*, No. 00-CV-7332, 2001 WL 604007, at *15–16 (S.D.N.Y. June 1, 2001)).  Moreover, the complaint is similarly devoid of any assertions that the plaintiff was diligently pursuing his rights in the years since the origination or modification.  "[A]n untimely TILA complaint 'wholly devoid of any allegations [of] diligence on [plaintiff's] part' is subject to dismissal." *Latouche*, 2017 WL 8776975, at *7 (quoting *Arroyo v. PHH Mortgage Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *12 (E.D.N.Y. May 19, 2014)).

Therefore, the plaintiff has not pled facts justifying equitable tolling.  Counts VI and VII must be dismissed as untimely.

### b.    Count Eight

The plaintiff also alleges that his "loan account was repetitively charged with duplicative fees, including for items and services that were already paid by and/or charged to other persons" in violation of 12 C.F.R. § 1026.36(d)(2)(i).  (ECF No. 1 ¶¶ 139–42.)  12 C.F.R. § 1026.36(d)(2)(i) prohibits a "loan originator" that "receives compensation directly from a consumer in a consumer credit transaction secured by a dwelling" from "receiv[ing] compensation, directly or indirectly, from any person other than the consumer in connection with the transaction."  12 C.F.R. § 1026.36(d)(2)(i)(A)(1).  The defendants assert that the plaintiff has no claim under 12 C.F.R. § 1026.36 against Fay Servicing, because the section applies only to

18

"loan originators" and expressly excludes servicers "who offer or negotiate terms for purposes of renegotiating, modifying, replacing, or subordinating principal of existing mortgages." (ECF No. 37 at 26–27 (quoting 12 C.F.R. § 1026.36(a)(1)(E)).) According to the plaintiff, the exception does not apply to servicers "who offer or negotiate a transaction that constitutes a refinancing under § 1026.20(a)," and the plaintiff's 2022 modification was such a refinancing. (ECF No. 38-4 at 31 (quoting 12 C.F.R. § 1026.36(a)(1)(E)).)

The 2022 agreement was a modification, not a refinancing. Under TILA, "[a] 'refinancing occurs when an existing obligation . . . is satisfied and replaced by a new obligation undertaken by the same consumer.'" *Ryder v. J.P. Morgan Chase Bank*, 767 Fed. App'x 29, 32 (2d Cir. 2019) (summary order) (quoting 12 C.F.R. § 226.20(a)); *see also* 12 C.F.R. 1026.20 (providing the same definition of refinancing). In *Ryder*, the Second Circuit found that an agreement was "unambiguously" a loan modification, not a refinancing, where the agreement stated that "all terms and provisions of the [original] Loan Documents, except as expressly modified by this Agreement, remain in full force and effect" and that "nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of all the obligations contained in the Loan Documents[.]" *Ryder*, 767 Fed. App'x at 31–32.

The modification in this case contains nearly identical language. It provides that "[a]ll covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof. . . ." (ECF No. 1-15 at 3–4.) Thus, the 2022 agreement was a modification, not a refinancing. Accordingly, the plaintiff has no 12 C.F.R. § 1026.36 claim against Fay.

19

The plaintiff does not address whether U.S. Bank is a "loan originator" subject to the regulation.  However, Count VIII must be dismissed even if U.S. Bank is a "loan originator," because the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In the complaint, the plaintiff questions some charges on his account history and escrow account disclosures.  (ECF No. 1 ¶¶ 9–42.)[5]  But to violate 12 C.F.R. § 1026.36(d)(2)(i)(A)(1), U.S. Bank and Fay must have collected the same fees from the plaintiff and another person.  The complaint does not plead any facts suggesting who might have paid the allegedly duplicative fees; it merely asserts that the fees were "already paid by and/or charged to other persons."  (ECF No. 1 ¶ 141.)  This "formulaic recitation of the elements of a cause of action" is insufficient to state a claim.  *Twombly*, 550 U.S. at 555.  Accordingly, Count VIII is dismissed.

### c.      Count Nine

Count IX alleges that the defendants violated 12 C.F.R. § 1026.36(c)(1) by retaining "partial payments" in a "suspense or unapplied funds account," when Fay should have credited them to the plaintiff's loan account once sufficient funds accumulated "to cover a periodic payment."  (ECF No. 1 ¶¶ 143–50 (quoting 12 C.F.R. § 1026.36(c)(1)).)  However, the plaintiff does not provide any factual support for this claim.  He does not allege that he ever made partial payments, specify when his payments were not timely applied to his loan, or state the amount of money that was not properly credited.  In short, there is no factual basis to conclude that the defendants violated 12 C.F.R. § 1026.36(c)(1).  *See Matson*, 631 F.3d at 63.  As a result, Count IX must be dismissed.

---

[5] Claims regarding many of these fees would likely be time-barred by TILA's one-year state of limitations. 15 U.S.C. § 1640(e).

### III.    FDCPA Claims

Counts X and XI allege FDCPA violations under 15 U.S.C. §§ 1692e and 1692f, respectively.  (ECF No. 1 ¶¶ 215–65.)  The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means" or any "unfair or unconscionable means" to collect any debt.  15 U.S.C. §§ 1692e, 1692f.  To establish an FDCPA violation, a plaintiff must show that (1) he is a "'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt," (2) "the defendant collecting the debt [is] a 'debt collector,'" and (3) the defendant "engaged in an act or omission in violation of the FDCPA's requirements."  *Perez v. Experian*, No. 20-CV-9119, 2021 WL 4784280, at *12 (S.D.N.Y. Oct. 14, 2021) (quoting *Skvarla v. MRS BPO, LLC*, No. 21-CV-55, 2021 WL 2941118 at *2 (S.D.N.Y. July 12, 2021)); *see also Lewis v. Experian Info. Sols. Inc.*, No. 23-CV-857, 2024 WL 1308705, at *10 (E.D.N.Y. Mar. 27, 2024).  The plaintiff does not allege which of Fay's actions were unlawful debt collection practices.  In his opposition, he argues that the escrow account disclosures, which were attached to the complaint, (ECF No. 1-20), "contain[] debt collection language, erroneous escrow account calculations, and requests for payment of miscalculated escrow funds and shortages."  (ECF No. 38-4 at 31.)

The Court assumes that the plaintiff is a "consumer" and Fay is a "debt collector" within the meaning of the FDCPA.  The statute of limitations for an FDCPA claim is "one year from the date on which the violation occurs."  12 U.S.C. § 1692k(d).  Since the complaint was filed on August 29, 2024, the only timely claim relates to the November 20, 2023 escrow account disclosure.  (ECF No. 1-20 at 2–5.)  Once again, the plaintiff argues that equitable tolling applies to the claims about the earlier disclosures.  (ECF No. 38-4 at 31.)  However, as discussed above, a plaintiff must "plead facts demonstrating that he pursued his rights diligently, that Defendants

21

engaged in affirmative concealment warranting equitable tolling, or that any other extraordinary circumstance stood in Plaintiff's way." *Malek*, 2023 WL 2682408, at *7; *Nichols v. Niagara Credit Recovery, Inc.*, No. 12-CV-1068, 2013 WL 1899947, at *6 (N.D.N.Y. May 7, 2013) (concluding that the plaintiffs did not allege sufficient facts to apply equitable tolling to their FDCPA claims). There is no factual support in the complaint or even in the plaintiff's opposition to suggest that the plaintiff pursued the FDCPA claims with reasonable diligence. Dismissal "is warranted on that basis alone." *Latouche*, 2017 WL 8776975, at *9.

### a.    Count X

"In the Second Circuit, courts assessing potential violations of § 1692e are guided by two principles: (1) the FDCPA 'must be liberally construed to effectuate its stated purpose,' and (2) 'collection notices are to be looked at from the perspective of the "least sophisticated consumer."'" *Wilkins v. Specialized Loan Servicing, LLC*, 623 F. Supp. 3d 264, 271 (S.D.N.Y. 2022) (quoting *Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018)). "To determine whether a debt collector made false threats . . . courts consider two elements: (1) whether, from the perspective of the least sophisticated consumer, the debt collector threatened to take action and (2) whether the allegedly threatened action could not legally be taken or was not intended to be taken." *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7538, 2016 WL 1274541, at *4 (E.D.N.Y. Mar. 31, 2016); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (explaining that the FDCPA "prohibits the threat to take any action that is not intended to be taken" even if the threatened action would be legal (citations and quotations omitted)).

Fay says that it did not "threaten[] to take action," because the escrow account disclosures "make no demands for payment." (ECF No. 39 at 14.) In the November 2023

22

disclosure, however, Fay estimated that the plaintiff would not have enough money in the escrow account to pay his property taxes, mortgage insurance premiums, and homeowner's insurance premiums; Fay advised the plaintiff that "[t]he total shortage has been spread over the next 37 months and $117.49 will be added to your monthly payment beginning January 01, 2024." (ECF No. 1-20 at 2.) Liberally construed, this part of the disclosure could be seen as a threat for purposes of the FDCPA. *See Bauchamp v. Fin. Recovery Servs., Inc.*, No. 10-CV-4864, 2011 WL 891320, at *3 (S.D.N.Y. Mar. 14, 2011) (interpreting a debt collector's suggestion that it might increase the amount owed as a "threat").

Nevertheless, the plaintiff has not plausibly alleged that Fay acted illegally or that it was making empty threats. *Moukengeschaie*, 2016 WL 1274541, at *4. The plaintiff alleges that Fay "intentionally underestimate[d]" the amount that would be needed to pay taxes or insurance premiums each year to "avoid maintaining an interest-generating escrow balance on Plaintiff's behalf," to increase his monthly mortgage payment artificially, and to "create a deficiency requiring Fay to advance escrow funds on Plaintiff's behalf." (ECF No. 1 ¶¶ 41–42.) But he cites only Fay's projection of a shortage and a corresponding increase in his payment, an action that was lawful. According to 12 C.F.R. § 1024.17(f)(3)(i), which together with RESPA governs the administration of escrow accounts, if a servicer determines that there will be a shortage of funds in a borrower's escrow account, the servicer may "require the borrower to repay the shortage amount in equal monthly payments over at least a 12-month period." 12 C.F.R. § 1024.17(f)(3)(i)(C). That is all Fay did in the November 2023 notice.

A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," and cannot rely on mere "labels and conclusions" to support a claim. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. There is no basis in the complaint from which to

23

conclude that Fay's calculations were inaccurate or that Fay could not legally collect the increased amount. Nor does the plaintiff allege that his taxes or insurance premiums were lower than what Fay charged. The plaintiff's pleadings "have not nudged [his] claims across the line from conceivable to plausible," so Count X must be dismissed. *Twombly*, 550 U.S. at 570.

> **b.    Count XI**

15 U.S.C. § 1692f lists "unfair or unconscionable" debt collection practices, including attempting to collect a debt amount not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The plaintiff argues that Fay sought to collect "illegal fees, interest, and other charges" in the November 2023 escrow account disclosure. (ECF No. 1 ¶¶ 162–63.) This argument is meritless. Federal law and the 2022 loan modification authorized Fay to account for escrow account shortages by collecting payments from the plaintiff. As discussed above, RESPA allows servicers to require borrowers to pay for escrow account shortages. *See* 12 C.F.R. § 1024.17(f)(3)(i). Moreover, the plaintiff agreed when he signed the loan modification agreement that "[i]f there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA . . . ." (ECF No. 1-15 at 5.) As explained above, the plaintiff has not alleged any facts to show that the charges were wrong. Accordingly, Count XI is dismissed.

## CONCLUSION

For these reasons, the defendants' motion is granted and the complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment dismissing the case and close the case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 23, 2026

25